NORTH CENTRAL F.S., INC.,
Plaintiff/Counterclaim
Defendant,

v.

Alan L. BROWN, David Burmester, Don Butson, Steve Hackbarth, Ken Mutschler, Marlyn Tripp, Kurt Wolf, and Maurice Wolf, Defendants/Counterclaim Plaintiffs.

CEBAR FARMS, INC., Barbara Lyon, Jerry Lyon, and James Dean Krabbe, Plaintiffs/Counterclaim Defendants,

v.

NORTH CENTRAL F.S., INC.,
Defendant/Counterclaim
Plaintiff.

Nos. C 96–3074–MWB, C 96–3080–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Dec. 23, 1996.

Steven H. Hoeft and Steven S. Scholes, McDermott, Will & Emery, Chicago, IL, Roger T. Stetson and Edward M. Mansfield, Belin, Harris, Lamson, McCormick, Des Moines, IA, for Elevator.

Glenn L. Norris and George F. Davison, Jr., Hawkins & Norris, Des Moines, IA, for Producers.

**MEMORANDUM OPINION AND ORDER REGARDING SUBJECT MATTER JURISDICTION AND DEFENDANT'S MOTION TO DISMISS CLAIMS**

## TABLE OF CONTENTS

I.   INTRODUCTION .............................................1386
     A.   The Cases .......................................1386
     B.   The Claims And Counterclaims ...................1386
     C.   The Motions To Dismiss .........................1388
     D.   The Jurisdictional Question ....................1390

II.  BACKGROUND ...........................................1390

III. LEGAL ANALYSIS .......................................1391
     A.   Subject Matter Jurisdiction ....................1391
          1. General principles ..........................1391
             a.   The "well-pleaded complaint" rule ......1393
             b.   Claims "arising under" federal law .....1394
          2. Do the present claims "arise under" federal law? ....1395
             a.   Declaratory judgment claims ............1395
             b.   Breach-of-contract claims ..............1398
             c.   Other federal claims ...................1400
     B.   The Motions To Dismiss .........................1403
          1. Standards for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) ....1404
          2. The CEA fraud claims ........................1404
             a.   Rescission as a remedy under the CEA ...1405
             b.   Pleading of fraud with sufficient particularity ....1405
                  i.   Fed.R.Civ.P. 9(b) .................1407
                  ii.  The pleading of fraud here ........1408
          3. Adequacy of other claims ....................1409
     C.   Subject Matter Jurisdiction Revisited ..........1409
          1. Supplemental jurisdiction and compulsory counterclaims ....1409
          2. Disposition of all claims ...................1411

IV.  CONCLUSION ...........................................1412

---

BENNETT, District Judge.

This opinion is the court's third endeavor to answer the question, when does a federal court have subject matter jurisdiction over the issue of whether so-called "hedge-to-arrive" contracts (HTAs) for the sale and purchase of grain are illegal futures contracts under the Commodity Exchange Act (CEA), 7 U.S.C. §§ 1–25? In its prior decisions considering this question, the court was presented with breach-of-contract cases filed in state court by elevators, but removed to this federal court by the defendant grain producers, who asserted that the issue of the legality or illegality of the contracts under the CEA established the subject matter jurisdiction of the federal court. *See Farmers Co-op. Elevator of Buffalo Center, IA v. Abels*, 950 F.Supp. 931, (N.D.Iowa 1996) (fifty-three related cases); *Farmers Co-op. Elevator v. Doden*, 946 F.Supp. 718 (N.D.Iowa 1996). The court rejected that contention, because the federal question upon which subject mat-

ter jurisdiction was asserted was raised only as a defense to a state-law cause of action.

The present cases are upon different procedural footings. In these cases, it is the court, not one of the parties, that has raised the threshold question of subject matter jurisdiction. Furthermore, both of these cases are declaratory judgment actions originally brought in federal court, one by an elevator and the other by grain producers, and each presents additional claims or counterclaims ostensibly under the CEA upon which the parties assert the subject matter jurisdiction of the court may be based. In addition to the question of subject matter jurisdiction, the court is presented here with entirely new questions raised by the elevator's motions to dismiss the grain producers' claims or counterclaims in each case. The elevator asserts that fraud claims have not been pleaded with sufficient particularity and that other counts fail to state claims upon which relief can be granted.

## I. INTRODUCTION

Although the present opinion addresses questions of subject matter jurisdiction and motions to dismiss claims or counterclaims in two cases, those two cases have not been formally consolidated in any way. Rather, the court and the parties, represented by the same counsel in each case, have recognized the near identity of issues presented, despite differences in whether the suit was filed by the elevator or the grain producers. Therefore, for the sake of convenience, the court conducted a joint hearing on subject matter jurisdiction and the motions to dismiss in each case on December 12, 1996, and now files a single opinion.

### A. The Cases

The controversy in each of these cases centers on so-called "hedge-to-arrive" or HTA contracts entered into by the parties. In each of the cases, one or both of the parties raise the question of the legality or illegality of the HTAs under the CEA. Additionally, the cases involve claims arising from alleged breach of the contracts and alleged fraud or misrepresentation in the inducement to enter into the contracts. North Central F.S., Inc. (the Elevator), filed the first of these actions, Case No. C96–3074 (the North Central Case), on August 20, 1996, by filing a complaint for declaratory judgment and other relief against grain producers Alan L. Brown, David Burmester, Don Butson, Steve Hackbarth, Ken Mutschler, Marlyn Tripp, Kurt Wolf, and Maurice Wolf. The second of these actions, Case No. C96–3080 (the CeBar Farms Case), which also seeks declaratory judgment and other relief, was filed against the Elevator on September 10, 1996, by another group of grain producers, CeBar Farms, Inc., Barbara Lyon and Jerry Lyon, who are the principals of CeBar Farms, and James Dean Krabbe. All of the grain producers will be referred to herein collectively as the Producers, but where distinctions must be made, they will be identified as either the North Central Defendants or the CeBar Farms Plaintiffs.

The Elevator is represented in both of these cases by counsel Steven H. Hoeft and Steven S. Scholes of McDermott, Will & Emery in Chicago, Illinois, and by local counsel Roger T. Stetson and Edward M. Mansfield of Belin, Harris, Lamson, McCormick in Des Moines, Iowa. The Producers are represented in each case by counsel Glenn L. Norris and George F. Davison, Jr., of Hawkins & Norris in Des Moines, Iowa.

The North Central Defendants answered the Elevator's complaint in the North Central Case on August 27, 1996, asserting affirmative defenses and counterclaims. On September 16, 1996, the Elevator moved to dismiss all of the counterclaims in the North Central Case. Prior to answering the complaint in the CeBar Farms Case, the Elevator filed, on October 11, 1996, a motion to dismiss all but the first count of the complaint for failure to state a claim upon which relief can be granted. However, the Elevator eventually answered the complaint in the CeBar Farms Case on October 21, 1996, asserting various affirmative defenses and counterclaims. The court will detail the claims and counterclaims in these actions in the next section of this opinion.

### B. The Claims And Counterclaims

In the North Central Case, the Elevator seeks, in Count I, declaratory judgment that the HTA contracts it has entered into with each of the North Central Defendants are valid, binding, and enforceable contracts exempt from the CEA and that each of the defendants is obligated under the HTAs to deliver corn to the Elevator under terms specified in the HTAs. As further relief on this count, the Elevator also seeks attorneys fees and costs incurred in pursuing this action and such other relief as the court deems just and proper. In Count II of its complaint, the Elevator seeks damages for repudiation of the HTAs, including lost revenues, as well as attorneys fees and costs. In Count III, the Elevator asserts a claim of promissory estoppel, and as relief asks the court to impose a constructive trust in favor of the Elevator on all corn the defendants currently have in storage or that they have planted, but not yet harvested; to impose an equitable lien in favor of the Elevator on all corn the defendants currently have in storage or have planted, but not yet harvested;

to order the defendants to account for any and all proceeds from sales of corn harvested in 1995; to compensate the Elevator for its actual damages from repudiation of the HTAs, including lost revenues; temporarily and permanently to enjoin the defendants from selling or otherwise transferring or encumbering in any way any interest in corn the defendants currently have in storage or have planted, but not yet harvested, to any person other than the Elevator; and to award the Elevator fees, costs, and any other proper relief. Finally, in Count IV of the complaint in the North Central Case, the Elevator asserts a claim for unjust enrichment. The Elevator seeks the same relief on this count as is sought under Count III. Thus, at least at first blush, only Count I of the Elevator's complaint appears to be the basis for federal question jurisdiction in this case, as the remaining counts are state-law claims. However, as shall be seen below, the Elevator contends that its breach-of-contract claims also arise under federal law.

In addition to their answer and affirmative defenses to the Elevator's claims in the North Central Case, the North Central Defendants have filed a counterclaim. Count I of their counterclaim also seeks declaratory judgment concerning the legality of the HTAs, but this time the claim asserts that the HTAs are illegal futures contracts under section 4(a) of the CEA, 7 U.S.C. § 6(a). As relief, the North Central Defendants ask the court to declare the rights and other legal relations of the parties with respect to the HTAs in light of controlling statutes, rules, and regulations of the United States; to declare the HTAs in question illegal, void, and unenforceable; and to grant such other relief as the court deems just and proper in addition to costs and disbursements in this action. Count II of the counterclaim alleges fraud in violation of section 4b of the CEA, 7 U.S.C. § 6b. It seeks as relief the same declarations sought in Count I of the counterclaim, as well as rescission of any purported obligation under the HTAs and such other relief as the court deems just and proper in addition to costs and disbursements of this action. Count III of the counterclaim is again a claim of fraud in violation of section 4b of the CEA, 7 U.S.C. § 6b, but this count

seeks as relief damages, plus interest, costs, and attorneys fees. Count IV of the counterclaim is a common-law claim of fraudulent misrepresentation by representatives of the Elevator allegedly intended to induce the North Central Defendants to enter into the HTAs. It seeks rescission or cancellation of the contracts as relief, as well as such other relief as the court deems equitable. Count V is another common-law claim for fraudulent misrepresentation, but this count seeks damages, both actual and punitive, plus costs, attorneys fees, and such other relief as the court deems equitable. Count VI asserts negligent misrepresentation against the Elevator, and seeks as relief actual and punitive damages, interest, costs, and any other relief the court deems equitable. Finally, Count VII of the counterclaim is a cause of action for breach of contract. It asserts that the Elevator breached material terms of the HTAs, including a covenant that it would be responsible for commission and margin requirements of the transactions involved in the HTAs, and a covenant that, if the North Central Defendants were dissatisfied with the price they were to receive under the HTAs, they could "roll" the contracts into a deferred month and sell grain otherwise committed to contract on the open market. On this count of their counterclaim, the North Central Defendants seek actual and punitive damages, interest, and the costs of the action. Thus, Counts I–III of the counterclaim may assert an "independent basis" for federal jurisdiction over the counterclaim, because they are ostensibly brought pursuant to the CEA. However, the Producers assert that the remaining counterclaims, and the parallel claims in the CeBar Farms action, although state-law causes of action, also provide the basis for the subject matter jurisdiction of this court. The Producers argue that these state-law claims fall within the CEA as the result of "conflict preemption," and therefore are governed by federal law.

The complaint filed by the CeBar Farms Plaintiffs exactly parallels the seven counts of the counterclaim filed by the other group of grain producers in the North Central Case. Thus, Count I is for declaratory judgment that the HTAs are illegal under the

CEA; Count II alleges fraud in violation of the CEA and seeks rescission of the HTAs; Count III again alleges fraud in violation of the CEA, but seeks damages; Count IV alleges common-law fraudulent misrepresentation and seeks rescission; Count V alleges common-law fraudulent misrepresentation, but seeks damages; Count VI seeks damages for negligent misrepresentation; and Count VII seeks damages for breach of contract. Not only are the claims exactly parallel to the counterclaims in the North Central Case, but the factual allegations of conduct of the Elevator are identical. The Elevator's counterclaims in the CeBar Farms Case omit the Elevator's own claim for declaratory judgment, but otherwise exactly parallel the Elevator's claims in the North Central Case as to allegations and relief sought. Thus, Count I of the Elevator's counterclaim seeks damages for repudiation of the HTAs; Count II seeks equitable relief for promissory estoppel; and Count III seeks the same equitable relief as stated in Count II, but for unjust enrichment.

Only counts I–III of the complaint in the CeBar Farms Case specifically plead federal causes of action, and therefore suggest an obvious basis for subject matter jurisdiction, although the Producers again contend that all of their claims are governed by federal law. No counts of the counterclaim directly assert any federal cause of action that would stand as an independent basis for federal jurisdiction over the Elevator's counterclaim, although the Elevator appears to argue that its breach-of-contract claims arise under federal law and do establish such an independent basis for federal jurisdiction.

### C.  The Motions To Dismiss

The Elevator responded to the North Central Defendants' counterclaims in the North Central Case by moving to dismiss all of them on September 16, 1996. The North Central Defendants resisted the motion to dismiss on October 29, 1996, and the Elevator filed a reply brief in support of its motion to dismiss all counterclaims on November 19, 1996. On October 11, 1996, the Elevator also moved to dismiss counts II through VII of the complaint filed against it in the CeBar Farms Case. The Elevator omitted from this motion to dismiss any challenge to the declaratory judgment count.[1] No resistance was ever filed to the motion to dismiss in the CeBar Farms Case. It appears that the CeBar Farms Plaintiffs assumed that the court would also consider in the CeBar Farms Case the resistance filed by the North Central Defendants to the Elevator's motion to dismiss parallel claims, on identical grounds, in the North Central Case.[2]

The arguments of the parties concerning the motions to dismiss individual claims or parallel counterclaims, at least in skeletal form, are as follows. Only the arguments concerning dismissal of Count I of the counterclaim in the North Central Case are peculiar to that case. The Elevator has moved to dismiss Count I of that counterclaim, the count seeking declaratory judgment, on the ground that it is redundant of the Elevator's own principal claim for declaratory judgment. The Elevator contends that, under *Fed.R.Civ.P.* 12(f), a counterclaim that only restates the controversy initiated by the complaint should be stricken as redundant. The Elevator contends that the North Central Defendants' claim for declaratory judgment simply alleges the converse of what the Elevator has alleged, *i.e.*, instead of seeking a declaration that the HTAs are valid and enforceable, the North Central Defendants

---

1. The Elevator had not itself sought declaratory judgment on the issue of legality or illegality of the HTAs under the CEA in the CeBar Farms Case. Based on its arguments for dismissal of the North Central Defendants' declaratory judgment claim in the North Central Case, it appears that the Elevator did not plead its own declaratory judgment claim in the CeBar Farms Case, because such a claim would be redundant and hence forbidden by *Fed.R.Civ.P.* 12(f).

2. In recognition of the fact that a timely resistance has been filed to an essentially identical motion to dismiss parallel claims, albeit in a different, but related case involving the same movant, the court will not impose the full rigors of N.D.Ia.LR 14(f), which states that "[i]f no resistance is filed the motion may be granted." N.D.Ia.LR 14(f). It is clear, under these unusual circumstances, that the movant and the court have been apprised of the nonmovant's grounds for resistance to the motion to dismiss in the CeBar Farms Case.

seek a declaration that the HTAs are illegal futures contracts that are not valid or enforceable under the CEA.

The North Central Defendants assert that Count I of their counterclaim is viable, because their own request for declaratory judgment is based on different facts and requests different relief. They contend that the Elevator's declaratory claim requests a declaration requiring that each defendant deliver corn to the Elevator under the terms of the HTAs, while their declaratory judgment claim seeks a declaration that the HTAs violate the CEA and that the contracts are therefore illegal, void, and unenforceable. The North Central Defendants contend that their claim for declaratory judgment can stand alone without reference to the Elevator's declaratory judgment claim, and to reject their claim as redundant would leave them without the relief to which they are entitled under the Declaratory Judgment Act. For rejoinder, the Elevator contends that the claims are different sides of the same coin: Both parties seek a declaration of their rights under the HTAs, in light of all pertinent facts, and the differing relief the parties seek will necessarily flow from a declaration favorable to one side or the other.

The remaining claims the Elevator seeks to dismiss appear in both lawsuits. The Elevator seeks dismissal of all of the fraud claims, both those under the CEA and those under the common law, found in Counts II through V of the claims or counterclaims filed by the Producers, on the ground that the Producers have failed to allege fraud with the particularity required by *Fed. R.Civ.P.* 9(b). The Elevator contends that the pleadings fail to identify what fraudulent statements were purportedly made, instead alleging only that unidentified statements were made that amounted to "express or implied" representations about certain events. The Elevator contends that pleading what someone inferred from a statement is not adequate; the statement itself must be pleaded. The Elevator also contends that the makers of the statements are inadequately identified, because statements are attributed to one person "and/or" another. Furthermore, the Elevator contends that the

fraud allegations do not identify the time and dates of the unidentified statements, whether they were made orally or in writing, or the location where they were made. Finally, the Elevator contends that conclusory allegations of scienter are insufficient.

In response, the Producers quote lengthy sections from their complaints or counterclaims that they assert establish the requisite specificity of the fraud pleadings, and cite other sources, such as the dates the HTA contracts were executed, as identifying adequately by inference the time and place misrepresentations were made. The Producers also contend that the Elevator is well aware of when its representatives had meetings with individuals and where those meetings took place, so that the Elevator is not unaware of the necessary circumstances surrounding the alleged frauds. In reply, the Elevator contends that the Producers have admitted in their resistance some of the inadequacies of their fraud pleadings and failed to address others.

The Elevator's remaining grounds for dismissal of the fraud and other claims are more simply stated. The Elevator contends that Counts II and III are inadequately pleaded, because they do not allege that the Elevator acted "for and on behalf of" the Producers, as required for a cause of action pursuant to § 4b of the CEA, 7 U.S.C. § 6b. Instead, the Elevator contends that the pleadings establish only that it acted as a principal in an arms-length transaction with the Producers. The Elevator contends that Count II must also be dismissed, because rescission is not a remedy available under the CEA, and Count III must be dismissed, because the Producers have not alleged that they sustained any losses as the result of any action by the Elevator. The Elevator contends that the common-law fraud claims asserted in Counts IV and V of the Producers' complaint and counterclaim again are inadequately pleaded under *Fed.R.Civ.P.* 9(b) and that the Elevator had no duty to disclose information to the Producers, because there was no fiduciary duty owed by the Elevator to the Producers. Furthermore, the Elevator contends that the rescission claim in Count IV fails, because the Producers did not return any benefits

they obtained from the bargain. As to Count VI, the Elevator contends that it was not in the business of supplying information or opinions to the Producers, so that a negligent representation claim will not lie. Finally, as to Count VII, which alleges breach of covenants alleged to be part of the HTAs, the Elevator contends that the Producers have "abjectly" failed to allege their version of the terms and conditions of the HTAs. In response, the Producers point to portions of their pleadings and the elements of the alleged offenses, which they assert demonstrate the adequacy with which they have pleaded each of their claims.

### D. The Jurisdictional Question

Although the Elevator brought these matters before the court on its assertion that the Producers have failed to state claims upon which relief can be granted, it was the court that raised the threshold issue of its subject matter jurisdiction over these cases. The court had already decided the question of subject matter jurisdiction in one similar case between an elevator and grain producers involving HTAs contracts, and motions challenging the court's subject matter jurisdiction had been filed in dozens of other such cases. See Farmers Co-op. Elevator v. Doden, 946 F.Supp. 718 (N.D.Iowa 1996). Following a status conference on October 31, 1996, the court directed the parties to file supplemental briefs on the question of the court's subject matter jurisdiction in the North Central and CeBar Farms Cases.

The Producers filed a submission in support of the court's subject matter jurisdiction, consisting of complaints in actions before the Commodity Futures Trading Board considering HTA contracts, on November 15, 1996. Next, the Elevator filed a brief in support of the court's subject matter jurisdiction on November 22, 1996, followed by an amended version of that brief on November 25, 1996. On December 2, 1996, the Producers filed a brief in support of the contention that the court had subject matter jurisdiction.[3]

The Elevator contends that its causes of action are created by federal law, specifically, the CEA, and require construction of that federal law. The Elevator also contends that its claims involve substantial federal questions in light of its own and its opposing party's threatened or actual actions. The Producers assert that two arguments are "dispositive" on the question of the court's subject matter jurisdiction in these cases: "(1) both sides agree that their claims are based on federal law, and (2) neither side has filed an action in state district court." Counterclaim Plaintiff's Brief In Support Of The Court's Jurisdiction Of The Subject Matter (North Central Case), at 1. They focus on the question of whether the court has subject matter jurisdiction over their own claims and counterclaims, rather than on the question of the court's subject matter jurisdiction over the Elevator's claims or counterclaims. They contend that their own claims, particularly Count III, a fraud claim for damages purportedly under the CEA, falls within the court's exclusive jurisdiction pursuant to § 22(c) of the CEA, 7 U.S.C. § 25(c). However, they also contend that the remainder of their claims arise directly under federal law or arise under federal law as the result of "conflict preemption" with the CEA. Finally, they contend that the court should, in its discretion, exercise jurisdiction over the declaratory judgment claims presented. These contentions are stated and considered more fully in the court's legal analysis.

### II. BACKGROUND

Because both subject matter jurisdiction and motions to dismiss are to be considered on the basis of the face of the complaint, see Victor Foods, Inc. v. Crossroads Economic Dev. of St. Charles County, Inc., 977 F.2d 1224, 1227 (8th Cir.1992) (federal subject matter jurisdiction must be apparent from the face of the complaint); and compare Fed.R.Civ.P. 12(b)(6) (a motion to dismiss pursuant to Rule 12(b)(6) requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted), the court looks to the factual allegations of the claims and

3. All of these supplemental briefs were filed in the North Central Case, but they address the

comparable considerations of subject matter jurisdiction in the CeBar Farms Case.

counterclaims of the parties for the necessary factual background to the present disputes.

The Elevator, which is an agricultural cooperative owned by its members, operates grain elevators in Alexander, Chapin, Coulter, and Hansell, Iowa. The Producers are each producers of grain in central Iowa. In its claims, the Elevator alleges that each of the Producers entered into so-called "hedge-to-arrive" or HTA contracts with the Elevator for the purchase and sale of corn. The HTAs are alleged to be contracts that protect the farmers from fluctuations in grain prices while providing the Elevator with grain for actual delivery. The HTAs provide that the sellers may "roll" their delivery dates in light of price fluctuations and the opportunity to sell grain on the open market. However, the Elevator alleges that the Producers all eventually repudiated the HTA contracts, claiming, among other things, that they were illegal and unenforceable under the CEA. The Elevator alleges that as a result of repudiation of the HTAs, it has incurred substantial losses from its failure to deliver grain on its own contracts. The Elevator alleges further that each of the Producers promised and agreed to deliver grain to the Elevator under the HTAs, but has refused to do so, forcing the Elevator to close short futures contracts it had carried to hedge its obligations under the HTAs. The Elevator also alleges that the Producers have been unjustly enriched, because they will realize or have realized substantially higher prices by selling the corn due under the HTAs on the cash market, while forcing the Elevator to incur losses.

Although the Producers deny the majority of the Elevator's factual allegations, they make further factual allegations in support of their own claims. They allege that the terms of the HTAs are such that the contracts are not valid "cash forward" contracts, exempt from the CEA, but illegal, off-market futures contracts prohibited by the CEA. Among other things, they assert that the contracts were not for actual delivery of corn, because the total amount of grain due under the contracts exceeds their maximum annual corn production; thus, the contracts must be intended as futures contracts. They allege that the HTAs have not only disrupted their own grain production and marketing, but have disrupted and impacted the price of grain on the contract and futures markets. They also allege that the HTAs were procured by various misrepresentations by representatives of the Elevator. These misrepresentations allegedly included misrepresentation of the risk the Producers would run by entering into the HTAs, their responsibility for commissions and margins payable under the contracts, their ability to choose to sell their grain either under the HTAs or on the cash market, and furthermore, that these misrepresentations included failure to disclose that the HTAs would be subjected to moves in the futures market, that the Elevator could unilaterally terminate the contracts, and that the Producers would incur risks for more than one year. Finally, the Producers allege that the Elevator has breached covenants in the HTAs, including a covenant that the Elevator would be responsible for commission and margin requirements of the transaction in question and a covenant that the Producers could "roll" the contracts if they were dissatisfied with the price they were to receive for grain under the contracts and instead sell their grain on the open market.

### III. LEGAL ANALYSIS

Although these matters initially came before the court on the Elevator's motions to dismiss, the court must first determine whether it has subject matter jurisdiction over either case before it can proceed to the question of the adequacy of the pleadings. Therefore, the first section of the court's legal analysis examines subject matter jurisdiction.

#### A. Subject Matter Jurisdiction

#### 1. General principles

The federal district courts have always been courts of limited jurisdiction. *See* U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Ma-*

*rine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 1 Cranch 137 [5 U.S. 137], 2 L.Ed. 60 (1803)); *see also Neighborhood Transp. Network, Inc. v. Peña,* 42 F.3d 1169, 1171 (8th Cir.1994) (federal court jurisdiction is limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra); Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).

"The parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 2287, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent," citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, and n. 17, 71 S.Ct. 534, 541–42, and n. 17, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 F.2d 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 8 Pet. 148, 149 [33 U.S. 148, 149], 8 L.Ed. 898 (1834)); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). Even where "'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.'" *White v. Nix,* 43 F.3d 374, 376 (8th Cir.1994) (quoting *Lewis v. United States Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir.1993)). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994); *Sanders,* 823 F.2d at 216. However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." *Id.* Because jurisdiction is a threshold issue for the court, the district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States,* 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990), which in turn quotes *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994). The court of appeals will review *de novo* a district court's determination that it lacks subject matter jurisdiction. *Schneider v. United States,* 27 F.3d 1327, 1331 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995); *General Elec. Capital Corp.,* 991 F.2d 1376, 1380 (8th Cir.1993); *Keene Corp. v. Cass,* 908 F.2d 293, 296 (8th Cir.1990).

Thus, the Producers' broad contentions that the court has subject matter jurisdiction over these cases are plainly without merit. The Producers assert that two arguments are "dispositive" on the question of the court's subject matter jurisdiction in these cases: "(1) both sides agree that their claims are based on federal law, and (2) neither side

has filed an action in state district court." Counterclaim Plaintiff's Brief In Support Of The Court's Jurisdiction Of The Subject Matter (North Central Case), at 1. The agreement of the parties simply is not dispositive of any issue of the court's subject matter jurisdiction. *Pacific Nat'l Ins. Co.*, 341 F.2d at 516; *see also Union Gas Co.*, 491 U.S. at 25, 109 S.Ct. at 2287; *Owen Equip. & Erection Co.*, 437 U.S. at 377 n. 21, 98 S.Ct. at 2404 n. 21; *Sosna*, 419 U.S. at 398, 95 S.Ct. at 556–57; *LaRue*, 409 U.S. at 112 n. 3, 93 S.Ct. at 394 n. 3; *American Fire & Casualty Co.*, 341 U.S. at 17–18, and n. 17, 71 S.Ct. at 541–42 and n. 17; *Mitchell*, 293 U.S. at 244, 55 S.Ct. at 165; *Jackson*, 8 Pet. at 149 [33 U.S. at 149]; *Lawrence County*, 668 F.2d at 29. Nor has the court found any authority whatsoever, and the Producers cite none, for the proposition that this court's subject matter jurisdiction depends upon whether or not the parties have filed another action in state court. Furthermore, because the federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins, *Pioneer Hi–Bred Int'l*, 35 F.3d at 1242; *Sanders*, 823 F.2d at 216, it cannot be the rule that the court should in any way refer to the presence or absence of a comparable action in another court to determine whether the federal court has subject matter jurisdiction. The Elevator's own assertions of subject matter jurisdiction over its complaint in the North Central Case may be somewhat more substantial, as may some of the Producers' more specific assertions of subject matter jurisdiction over their claims and counterclaims in both cases.

### a. The "well-pleaded complaint" rule

■ The party seeking federal jurisdiction over its claims "must sufficiently allege the basis for federal subject matter jurisdiction in its complaint." *Victor Foods, Inc. v. Crossroads Economic Dev. of St. Charles County, Inc.*, 977 F.2d 1224, 1227 (8th Cir. 1992); *Bowe v. Northwest Airlines, Inc.*, 974 F.2d 101, 103 (8th Cir.1992), *cert. denied*, 507 U.S. 992, 113 S.Ct. 1602, 123 L.Ed.2d 164 (1993). The Eighth Circuit Court of Appeals has explained this "well-pleaded complaint" rule further, albeit in the context · of the court's removal jurisdiction: [4]

> The "well-pleaded complaint rule" requires that a federal cause of action must be stated on the face of the complaint before the defendant may remove the action based on federal question jurisdiction. [*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987) ]. A federal defense, including the defense that one or more claims are preempted by federal law, does not give the defendant the right to remove to federal court. *Id.* at 392–93, 107 S.Ct. at 2429–30.

*Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542–43 (8th Cir.1996); *Reding v. FDIC*, 942 F.2d 1254, 1257 (8th Cir.1991) ("The judicially created well-pleaded complaint rule states that the basis of federal jurisdiction must appear on the face of the plaintiff's complaint and that removal to federal court is improper if federal jurisdiction is premised solely upon a plaintiff's allegation of an anticipated defense or upon a defendant's responsive pleading,") citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 809 & n. 6, 106 S.Ct. 3229, 3232, 3233 & n. 6, 92 L.Ed.2d 650 (1986); *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 611 (8th Cir.1991) ("When plaintiff's action is properly brought under state law, the defendant is not entitled to remove simply because federal law or principles of federal preemption will provide a defense, even a complete defense, to plaintiff's state law claims."); *accord Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 915 (3d Cir.1994) ("[T]he fact that a defense based on federal law will be raised does not create jurisdiction in the federal courts unless the case falls within that small category where the governing federal statute preempts the field and was clearly intended to support removal jurisdiction," citing *Metropolitan Life Ins. Co. v.*

---

4. Both the statute providing for original federal question jurisdiction, 28 U.S.C. § 1331, and the removal statute, 28 U.S.C. § 1441, provide for jurisdiction over cases "arising under" federal law.

*Taylor,* 481 U.S. 58, 66–67, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987)); *Caudill v. Blue Cross & Blue Shield of N.C.,* 999 F.2d 74, 77 (4th Cir.1993) ("Of course, a cause of action arises under federal law only when the plaintiff's 'well-pleaded complaint' raises federal issues; federal issues interposed as a defense generally do not create a cause of action 'arising under' federal law," citing *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908)). Indeed, a defense based on federal law, even one anticipated in the plaintiff's complaint, cannot support original or removal jurisdiction " 'even if both parties admit that the defense is the only question truly at issue in the case.' " *Hurt v. Dow Chem. Co.,* 963 F.2d 1142, 1144 (8th Cir.1992) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 14, 103 S.Ct. 2841, 2848–49, 77 L.Ed.2d 420 (1983)).

### b. Claims "arising under" federal law

The parties here are not diverse, so federal jurisdiction must be based on some federal question. Federal question jurisdiction is defined by statute as follows:

> The district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331 (emphasis added). Thus, in order to assert federal question jurisdiction, the court must be satisfied that the plaintiff's claim is one " 'arising under' federal law." *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 850, 105 S.Ct. 2447, 2450–51, 85 L.Ed.2d 818 (1985).

In *Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts,* 878 F.2d 1096 (8th Cir.1989), *cert. granted and judgment vacated on other grounds,* 497 U.S. 1020, 110 S.Ct. 3265, 111 L.Ed.2d 775 (1990),[5] the Eighth Circuit Court of Appeals observed that there is "no 'single, precise definition' " of whether

a cause of action "arises under" federal law, but that " 'the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.' " *Three Buoys,* 878 F.2d at 1100 (quoting *Merrell Dow Pharmaceuticals, Inc.,* 478 U.S. at 808, 106 S.Ct. at 3232). However, in the context of whether a claim was one "arising under" federal law, the court also asserted the principle that "[t]here is a 'long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction,' " so that assertion of " '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.' " *Id.* (again quoting *Merrell Dow,* 478 U.S. at 813 and 808, 106 S.Ct. at 3234–35 and 3232, respectively, with emphasis added by the *Three Buoys* court).

More recently, in *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238 (8th Cir.1995), the Eighth Circuit Court of Appeals has found that a venerable decision of the Supreme Court provided guidance on the question of whether claims "arise under" federal law:

> In *Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936), the Supreme Court considered whether the action in dispute arose under federal law for purposes of applying 28 U.S.C. §§ 1331 and 1441 (district court's original and removal jurisdiction of actions "arising under" the Constitution, laws, or treaties of the United States). The Court explained,
>
> > How and when a case arises "under the Constitution or laws of the United States" has been much considered in the books. Some tests are well established. *To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.... The right or immunity must be such*

---

**5.** The Supreme Court vacated the appellate court's decision in *Three Buoys* for reconsideration of questions of admiralty law in light of *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). The opinion of the Eighth Circuit Court of Appeals on remand is reported at 921 F.2d 775 (8th Cir.1990), *cert. denied,* 502 U.S. 898, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991). The portion of the first appellate opinion relied on here was not addressed in the Supreme Court's order vacating the opinion, nor are these issues reconsidered in the subsequent appellate court decision.

*that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another....* A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto ... and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.... Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Id.* at 112–13, 57 S.Ct. at 97–98 (citations omitted).

*Humphrey,* 58 F.3d at 1246 (footnote omitted; emphasis added); *accord Ultramar Am., Ltd. v. Dwelle,* 900 F.2d 1412, 1414 (9th Cir.1990) (whether a claim is one "arising under" federal law depends on whether federal law is "a necessary element of one of the well-pleaded claims," citing *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. at 2848).

### 2. Do the present claims "arise under" federal law?

■ The parties assert that the court has subject matter jurisdiction based on three sets of claims or counterclaims. First, they contend that the court has subject matter jurisdiction over both cases based on the declaratory judgment claims seeking declarations of the legality or illegality of the HTAs under the CEA. Next, the Elevator contends that the court has subject matter jurisdiction over the original complaint in the North Central Case, because its breach-of-contract claims were "created by" or "arise under" the CEA. Finally, the Producers contend that they have pleaded claims or counterclaims that establish the subject matter jurisdiction of the court, specifically, fraud claims under the CEA, and other state-law claims that are nonetheless governed by

federal law, because of "conflict preemption" by the CEA.

#### a. Declaratory judgment claims

The Declaratory Judgment Act, 28 U.S.C. § 2201, itself does not provide an independent basis for federal jurisdiction. *Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 594 (2nd Cir.1996) ("[I]t is well-settled that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts"; therefore, the court would only have jurisdiction if a federal question "arising under" federal law, as required by 28 U.S.C. § 1331, was the "actual controversy" presented by the declaratory claim); *Victor,* 977 F.2d at 1227; *First Fed. Sav. & Loan Ass'n v. Anderson,* 681 F.2d 528, 533 (8th Cir.1982); *accord Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959, 964 (10th Cir.1996) ("The Declaratory Judgment Act does not confer jurisdiction upon federal courts," citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950), "so the power to issue declaratory judgments must lie in some independent basis of jurisdiction," and, absent diversity, that basis must be federal question jurisdiction); *Gaar v. Quirk,* 86 F.3d 451, 454 (5th Cir.1996) ("A petition for declaratory judgment concerning federal law is not sufficient to create federal jurisdiction; 'hence the relevant cause of action must arise under some other federal law,'" quoting *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1177 (5th Cir.1984)). Thus, a federal question, or some other proper basis for federal subject matter jurisdiction, must be raised even in an action under the Declaratory Judgment Act. *Starter Corp.,* 84 F.3d at 594–95 ("[W]e must first determine whether a federal question exists, and if it does—thereby providing the court with original jurisdiction—we must then determine whether the dispute presents a substantial controversy or merely an abstract question.... If both a federal question and an actual controversy exist, then declaratory judgment jurisdiction may appropriately be exercised.").[6]

---

6. Thus, not only is the Declaratory Judgment Act insufficient in itself to establish subject matter jurisdiction over an action, even if subject matter jurisdiction exists in a declaratory judgment action, still other impediments must be overcome before the court will exercise jurisdiction over the declaratory claim. Although the court does not decide the matter here, the court thinks it likely that these additional impediments can be overcome in this case and that, if subject matter

The Eighth Circuit Court of Appeals has noted that

> the *Declaratory Judgment Act* is not to be used to open a new portal of entry to federal court for suits that are essentially defensive or reactive to state actions. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 n. 20, 103 S.Ct. 927, 937 [n. 20], 74 L.Ed.2d 765 (1983); *BASF [Corp. v. Symington]*, 50 F.3d [555,] 558 [ (8th Cir.1995) ] (citing cases); *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1372–73 (9th Cir.1991); *Omaha Property [and Cas. Ins. Co. v. Johnson]*, 923 F.2d [446,] 448 [ (6th Cir. 1991) ]; *Continental Airlines [v. Goodyear Tire & Rubber Co.]*, 819 F.2d [1519,] 1524 [ (9th Cir.1987) ]; *Transamerica [Occidental Life Ins. Co. v. DiGregorio]*, 811 F.2d [1249,] 1253 [ (9th Cir.1987) ]; *Home Fed. Sav. and Loan Ass'n v. Ins. Dept. of Iowa*, 571 F.2d 423, 427 (8th Cir.1978).

> More specifically, the Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action. *Franchise Tax Bd.*, 463 U.S. at 16, 103 S.Ct. at 2849–50 (discussing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); *BASF*, 50 F.3d at 558. In addition, the Declaratory Judgment Act is not meant to expand federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 15–16, 103 S.Ct. at 2849–50; *Home Federal*, 571 F.2d at 427 n. 17.

*International Ass'n of Entrepreneurs v. Angoff*, 58 F.3d 1266, 1270 (8th Cir.1995) (emphasis in the original), *cert. denied*, —— U.S. ——, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996); *Three Buoys*, 878 F.2d at 1100–01 (concluding that a statute similar to the Declaratory Judgment Act, the Limitation of Liability Act (LLA), was not jurisdictional, and did not make a claim implicating the LLA one arising under federal law).[7] Although federal courts "regularly consider the merits of affirmative defenses raised by declaratory plaintiffs," *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir.1995) (citing, *inter alia*, *Kelly v. Robinson*, 479 U.S. 36, 40, 107 S.Ct. 353, 355–56, 93 L.Ed.2d 216 (1986)), that does not mean that federal jurisdiction over a declaratory judgment action can be founded on a federal question that is properly an affirmative defense. *Franchise Tax Bd.*, 463 U.S. at 16, 103 S.Ct. at 2849–50 ("[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is 'lacking.' "); *Angoff*, 58 F.3d at 1270 (citing *Franchise Tax Bd.*); *accord Cardtoons, L.C.*, 95 F.3d at 965 (quoting *Franchise Tax Bd.*, 463 U.S. at 16, 103 S.Ct. at 2849–50); *Gaar*, 86 F.3d at 454 ("The general rule is that a federal defense to a state law claim does not confer federal question jurisdiction.... [Thus, w]hen a declaratory judgment complaint essentially invokes a federal-law defense to a state-based claim, it is the character of the threatened state action that determines whether federal courts have jurisdiction.").

The Tenth Circuit Court of Appeals noted that "[i]n actions for declaratory judgment

---

jurisdiction exists, the declaratory judgment claims would be appropriate for the court to decide. *See, e.g., Olympus Aluminum Prods., Inc. v. Kehm Enters., Ltd.*, 930 F.Supp. 1295, 1304–08 (N.D.Iowa 1996) (articulating the requirements for a court to entertain a declaratory judgment action).

7. In the original panel opinion in the *Three Buoys* case cited here, the Eighth Circuit Court of Appeals wrote,

> In *Franchise Tax Board* the Supreme Court discussed its earlier decision in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The Court noted that *"Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a

state created action, jurisdiction is lacking.' " *Franchise Tax Board*, 463 U.S. at 16, 103 S.Ct. at 2850 (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2767 (2d ed. 1983)). In *Skelly Oil*, the Court concluded that the Declaratory Judgment Act was not a jurisdictional statute and it did not extend the jurisdiction of the federal courts. 339 U.S. at 671–72, 70 S.Ct. at 878–79. The Declaratory Judgment Act was found to be procedural and did not supply a new basis for subject matter jurisdiction.

*Three Buoys*, 878 F.2d at 1100–01. This portion of the opinion was not addressed in the Supreme Court's order vacating the opinion, nor are the issues reconsidered in the subsequent appellate court decision.

... the position of the parties is often reversed: the plaintiff asserts a defense to an anticipated action by the declaratory judgment defendants." *Cardtoons,* 95 F.3d at 964. Thus, that court reiterated, "It is the character of the impending action, not the plaintiff's defense, that determines whether there is federal question jurisdiction." *Id.* (citing *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242–43, 97 L.Ed. 291 (1952)). "[F]ederal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law." *Id.* The reversal of positions noted by the Tenth Circuit Court of Appeals is present in the CeBar Farms Case, in which the declaratory plaintiffs, the CeBar Farms Plaintiffs, do indeed seek declaratory judgment on their defense to the Elevator's anticipated action for breach of contract. Such a reversal of positions is not present, however, in the North Central Case, in which the original declaratory plaintiff, the Elevator, sought a declaration on the declaratory defendants' anticipated defense to the Elevator's own action. The reversal of positions reappears in the North Central Case only on the basis of the declaratory counterclaim filed by the North Central Defendants. This tangle suggests the efficacy of the general rule asserted by the Tenth Circuit Court of Appeals, that it is the character of the impending action, not who has asserted what contention in the declaratory judgment action, that determines whether there is federal question jurisdiction in a declaratory judgment action. *Id.*

The declaratory claims in the Elevator's Count I and the Producers' Count I, whatever party has asserted them, all seek a declaration on the legality or illegality of the HTAs under § 4(a) of the CEA, 7 U.S.C. § 6(a). Although the Elevator asserts that it filed its declaratory claim in anticipation of the various claims under the CEA filed by the Producers, including their fraud claims, the pleadings themselves do not support such a contention. First, none of the declaratory claims gives the merest hint that the CEA fraud claims actually asserted by the Producers were contemplated by any party when seeking a declaration that the HTAs were illegal under the CEA. The Elevator combined its declaratory claim in the North Central Case with an actual action for breach of contract, thus anticipating in its declaratory claim a defense to its own substantive claim. Similarly, the Producers filed their declaratory claims in Count I of each of their pleadings in response to actual filing of one breach-of-contract claim, in the North Central Case, and sought in the CeBar Farms Case to raise a declaration of illegality to any potential claim for enforcement of the contracts, as the relief requested shows. The declaratory claims of the Producers in Count I center on the legality or illegality of the HTAs under 7 U.S.C. § 6(a) as bars to the enforcement of the HTAs, because they seek a declaration that the contracts are void and unenforceable. Such a declaration would necessarily include a declaration as to whether the contracts in fact fall within the purview of the CEA. However, the pleading of these declaratory claims does not suggest a concern with any other illegality associated with the contracts, such as fraud in violation of the CEA. Furthermore, the court finds that the Producers' Count II seeks the necessary declarations for the CEA fraud claims, in that it seeks declarations of the rights of the parties under the CEA and declarations that the contracts are void owing to fraud in violation of § 4b of the CEA, 7 U.S.C. § 6b.

Thus, the threatened or actual action prompting the purely declaratory claims here is a state-law breach-of-contract suit to which the assertedly federal issue of the illegality of the HTAs under the CEA is an affirmative defense. *Fees v. Mutual Fire and Auto. Ins. Co.,* 490 N.W.2d 55, 58 (Iowa 1992) (defenses to breach of contract include that the contract is void or voidable, or that admitting the facts of the adverse pleading, the defendant is entitled to avoid their legal effect, and such affirmative defenses must be pleaded and proved by the party seeking to avoid the contract); *accord McCabe/Marra Co. v. Dover,* 100 Ohio App.3d 139, 652 N.E.2d 236 (illegality or invalidity of a contract is an affirmative defense that must be pleaded and proved by the party seeking to avoid the contract), *appeal not allowed,* 72 Ohio St.3d 1529, 649 N.E.2d 839 (1995); *Rice v. James,*

844 S.W.2d 64 (Mo.Ct.App.1992) (illegality of a contract is an affirmative defense that must be pleaded and proved by the party seeking to avoid the contract); *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4 (Tex.Ct.App.1988) (illegality of a contract is a defensive issue to be pleaded and proved by the defendant in a suit over breach of contract).

The court concludes that it does not have subject matter jurisdiction on the basis of the declaratory judgment claims in the Elevator's Count I in the North Central Case, Count I of the North Central Defendants' counterclaim in that case, or Count I of the CeBar Farms Plaintiffs in the CeBar Farms Case. The federal issue asserted in those declaratory claims is only a defense to a threatened or actual state-law action, which consequently cannot establish federal question jurisdiction. *Caterpillar, Inc.*, 482 U.S. at 392–93, 107 S.Ct. at 2429–30; *Merrell Dow Pharmaceuticals, Inc.*, 478 U.S. at 808, 809 & n. 6, 106 S.Ct. at 3232, 3233 & n. 6; *Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. at 2848–49; *Gaming Corp. of Am.*, 88 F.3d at 542–43; *Hurt*, 963 F.2d at 1144; *Reding*, 942 F.2d at 1257; *M. Nahas & Co.*, 930 F.2d at 611.

### b. *Breach-of-contract claims*

■ Nor does the Elevator's breach-of-contract claim itself "arise under" federal law, as the Elevator contends.[8] The Elevator contends that the CEA created its cause of action, because the CEA provides for exclusive jurisdiction in the federal courts of all public and private actions under the CEA. 7 U.S.C. § 25(c). This argument, of course, begs the question, rather than answering it: Is the Elevator's declaratory or breach-of-contract claim an action under the CEA? The Elevator also contends that the legality of the contracts is a "core" issue under the CEA. That might well be so. However, as this court has previously observed, to say that the legality of the contracts is a core issue under the CEA is to say no more than that the CEA governs the Producers' *defense* to the Elevators' state-law claims for breach

8. The Elevator's contention is cast in terms of whether the CEA "created" its cause of action, citing *Merrell Dow Pharmaceuticals, Inc.*, 478 U.S. at 809, 106 S.Ct. at 3232–33, and *W. 14th*

of contract. *Abels*, 950 F.Supp. at 938. As this court observed in *Doden*,

> Although the illegality of the contracts upon which [the elevator] is suing is an issue in the case, and indeed an issue controlled by federal law, the illegality, voidness, or voidability of a contract is an affirmative defense to enforcement of the contracts in question.

*Doden*, 946 F.Supp. at 729–30 (citations omitted). Again, as this court stated in *Doden*, "This court's conclusion that [the Producers'] federal issue is in fact a defensive issue has fatal consequences for this court's removal jurisdiction over th[ese] action[s]." *Id.* The effect of that conclusion is just as fatal to the court's original jurisdiction. A defense based on federal law, even one anticipated in the plaintiff's complaint, cannot support original or removal jurisdiction " 'even if both parties admit that the defense is the only question truly at issue in the case.' " *Hurt*, 963 F.2d at 1144 (quoting *Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. at 2848–49).

The Elevator nonetheless asserts that the decision in *W. 14th St. Comm. Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188 (2d Cir. 1987), suggests a different result as to the court's subject matter jurisdiction over both the Elevator's declaratory and breach-of-contract claims. In *W. 14th St.*, the Second Circuit Court of Appeals found that the federal courts had subject matter jurisdiction over essentially a breach-of-contract claim, because a federal defense under the Condominium and Cooperative Abuse Relief Act (CCARA), 15 U.S.C. §§ 3601–3616, had been anticipated in a claim for declaratory relief. *W. 14th St.*, 815 F.2d at 193. The Second Circuit Court of Appeals first concluded that, under the well-pleaded complaint rule, the action was a direct product of the CCARA. *Id.* The court stated, "It would make little sense to relegate developers to a state law remedy when the actions complained of are taken under the authority of a federal statute." *Id.* at 194. However, the Second Cir-

*St. Comm. Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 194 (2d Cir.1987), *cert. denied*, 484 U.S. 871, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987).

cuit Court of Appeals either failed to consider or did not then have available the copious authority, cited above, including authority from the United States Supreme Court and this circuit's court of appeals, holding that determinations of federal jurisdiction must exclude reference to any anticipated federal defense. *Caterpillar, Inc.*, 482 U.S. at 392–93, 107 S.Ct. at 2429–30; *Merrell Dow Pharmaceuticals, Inc.*, 478 U.S. at 808, 809 & n. 6, 106 S.Ct. at 3232, 3233 & n. 6; *Franchise Tax Bd.*, 463 U.S. at 16, 103 S.Ct. at 2849–50; *Gaming Corp. of Am.*, 88 F.3d at 542–43; *Angoff*, 58 F.3d at 1270; *Reding*, 942 F.2d at 1257; *M. Nahas & Co.*, 930 F.2d at 611; *accord Cardtoons, L.C.*, 95 F.3d at 965; *Gaar*, 86 F.3d at 454; *Virgin Islands Housing Auth.*, 27 F.3d at 915; *Caudill*, 999 F.2d at 77. The court reiterates, a defense based on federal law, even one anticipated in the plaintiff's complaint, cannot support original or removal jurisdiction " 'even if both parties admit that the defense is the only question truly at issue in the case.' " *Hurt*, 963 F.2d at 1144.

In *W. 14th St.*, the Second Circuit Court of Appeals also found that, even if the only causes of action asserted were state-law claims, they involved a substantive question of federal law, because the complaint asserting such claims would have to set forth the opponents' right of possession, a matter covered by the CCARA. *Id.* at 195. This conclusion is equally untenable, because it also amounts to anticipating the opponent's defense. The basis for an opposing party's current possession is not an essential element of an action for trespass or ejectment, *Humphrey*, 58 F.3d at 1246 ("To bring a case

within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action," quoting *Gully*, 299 U.S. at 112, 57 S.Ct. at 97), although presence of the opposing party on property claimed by another certainly is.[9]

The court concludes that the Elevator's breach-of-contract claims do not "arise under" the CEA, and hence cannot provide the basis for this court's subject matter jurisdiction. Again as in *Doden*, 946 F.Supp. at 733–34, the Producers' federal issue, the illegality of the contracts involved, is *not* an essential element of the Elevator's claims. *Humphrey*, 58 F.3d at 1246 ("To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action," quoting *Gully*, 299 U.S. at 112, 57 S.Ct. at 97). Instead, as determined above, the illegality, voidness, or voidability of a contract is an affirmative defense to enforcement of the contracts in question. *Fees*, 490 N.W.2d at 58; *accord McCabe/Marra Co.*, 652 N.E.2d at 236; *Rice*, 844 S.W.2d at 64; *MJR Corp.*, 760 S.W.2d at 4. Nor can the court conclude that the Elevator's claims are such that " '[t]he right or immunity' ... will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Humphrey*, 58 F.3d at 1246 (quoting *Gully*, 299 U.S. at 112, 57 S.Ct. at 97). It is not the construction or effect of the CEA that is determinative of the Elevator's claims, but the construction and effect of the HTAs as either "cash forward" contracts or illegal fu-

---

9. Nor is the Elevator's argument enhanced by a recent decision of the Eighth Circuit Court of Appeals, not cited by the parties, in which the court concluded that, although the validity of a contract did not raise a federal question *per se,* "certainly there are aspects of the dispute [between the contracting parties] which do." *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1421 (8th Cir.1996). The contract in that case was between an Indian tribe and a gaming management company to manage the tribe's casino and gaming activities within the boundaries of a reservation. *Id.* at 1414. The court concluded that

the entire association between the parties (and their various disputes) arise under [the Indian

Gaming Regulatory Act, or IGRA], and ... the management agreement at issue, once approved, remains so until disapproved by the [National Indian Gaming Commission, or NIGC]. Further, the case is being directed to the Tribal Court and exhaustion within that system. The existence of tribal court jurisdiction itself presents a federal question within the scope of 28 U.S.C. § 1331.

*Bruce H. Lien Co.*, 93 F.3d at 1421–22 (citations omitted). In these cases, the entire association between the parties does not arise under the CEA, because the CEA does not provide the only basis for any association between an elevator and a grain producer to conduct transactions involving the sale of grain.

tures contracts under the CEA that is determinative of the Producers' defense of illegality of the contracts. For these reasons, the breach-of-contract claims do not involve claims "arising under" federal law and do not provide a basis for federal jurisdiction over either of these cases.

Because neither the declaratory judgment claim nor the breach-of-contract claims asserted in the complaint in the North Central Case establishes the subject matter jurisdiction of the court, the North Central Case is not properly before the court on the basis of the complaint. Nor is the CeBar Farms Case properly before the court on the basis of the declaratory claim in Count I of the complaint in that case, although the court has not yet explored whether other claims in the complaint in that case provide a basis for the court to exercise subject matter jurisdiction. The court must consider next whether other claims, *i.e.*, claims asserted by the Producers, establish the subject matter jurisdiction of the court over these actions.

### c. Other federal claims

■ Even when the court has dismissed the complaint for lack of subject matter jurisdiction, as the court has concluded it must do in the North Central Case, the court must still consider whether it has subject matter jurisdiction over counterclaims asserted in that action. " 'Where a court dismisses an action for lack of federal subject matter jurisdiction, it may nonetheless adjudicate a counterclaim presenting an *independent basis* for jurisdiction.' " *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 269 (2d Cir. 1996) (quoting *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 753 (2d Cir.1996), with emphasis added by this court); *Niagara Mohawk Power Corp.*, 94 F.3d at 753; *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267

(9th Cir.1992) ("In this circuit, 'we recognize that a District Court generally may adjudicate a counterclaim having an independent basis for federal jurisdiction despite the dismissal of plaintiff's action for lack of subject matter jurisdiction,' " quoting *Boynton v. United States*, 566 F.2d 50, 52 (9th Cir. 1977)); *and compare Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n*, 888 F.2d 1576, 1578 (11th Cir.1989) (even where the court had subject matter jurisdiction over the original complaint, it could not consider a merely permissive counterclaim lacking an independent basis for subject matter jurisdiction). Although the Producers did not cite this rule or any authority in support of it as justifying jurisdiction over the counterclaims in the North Central Case, they nonetheless devoted the majority of their supplemental brief on subject matter jurisdiction to attempting to establish this court's subject matter jurisdiction over the counterclaims asserted in the North Central Case and the parallel claims in the original complaint in the CeBar Farms Case.

The claims of the Producers that are specifically pleaded as federal claims, and therefore could establish federal subject matter jurisdiction over these cases, are the claims alleging fraud in violation of § 4b of the CEA, 7 U.S.C. § 6b. Although the Producers argue that their other claims are also necessarily governed by the CEA, because of "conflict preemption,"[10] the court will begin with the claims pleaded under federal law, because if it finds these claims do establish the court's subject matter jurisdiction over these actions, the court will more than likely have jurisdiction over supplemental claims arising out of the same transactions.[11] *See* 28 U.S.C. § 1367.

■ Focusing on Count III of the counterclaim[12] in the North Central Case and the

**10.** Even if such common-law fraud claims would be "conflict preempted" as to contracts covered by the CEA, if the contracts are not covered by the CEA, the CEA is not the "exclusive remedy" for the fraud alleged, and the common-law claims would not be governed by federal law, nor would they have an independent basis in federal law.

**11.** Thus, if the court otherwise has subject matter jurisdiction over these actions, the court can

address at a later date the question of what law governs the ostensibly common-law claims asserted by the Producers.

**12.** Such a focus is appropriate, as this fraud count under the CEA seeks damages, which is the nature of the private cause of action authorized by 7 U.S.C. § 25(a). The Producers' Count II, which also alleges fraud in violation of the CEA, seeks rescission, and the Elevator has challenged that claim, in its motions to dismiss, as

complaint in the CeBar Farms Case, the claim for damages for fraud in violation of § 4b of the CEA, 7 U.S.C. § 6b, the Producers argue that the exclusive jurisdiction of the federal courts over this claim is established by § 22(c) of the CEA, 7 U.S.C. § 25(c). The jurisdictional section, as codified, provides as follows:

> The United States district courts shall have exclusive jurisdiction of actions brought under this section. Any such action shall be brought no later than two years after the date the cause of action arises. Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.

7 U.S.C. § 25(c). The applicable provision of the CEA providing for private rights of action is subsection (a) of codified § 25, which provides in pertinent part as follows:

**(a) Actual damages; actionable transactions; exclusive remedy**

> (1) Any person (other than a contract market, clearing organization of a contract market, licensed board of trade, or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any person—

>> (A) who received trading advice from such person for a fee;

>> (B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred

seeking a remedy not authorized by the CEA's

debt in lieu thereof) in connection with any order to make such contract;

>> (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of—

>>> (i) an option subject to section 6c of this title (other than an option purchased or sold on a contract market or other board of trade);

>>> (ii) a contract subject to section 23 of this title; or

>>> (iii) an interest or participation in a commodity pool; or

>> (D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

> (2) Except as provided in subsection (b) of this section, the rights of action authorized by this subsection and by sections 7a(11), 18, and 21(b)(10) of this title shall be the exclusive remedies under this chapter available to any person who sustains loss as a result of any violation of this chapter. Nothing in this subsection shall limit or abridge the rights of the parties to agree in advance of a dispute upon any forum for resolving claims under this section, including arbitration.

7 U.S.C. § 25(a). The Producers contend that they have alleged transactions of the kind identified in § 25(a)(1)(A), (B), and (D), and point to sections of the counterclaim in the North Central Case, including ¶¶ 10, 12–20, and 26 of Count III, in support of that contention, and presumably would point to comparable sections of Count III of the complaint in the CeBar Farms Case. Furthermore, they contend that they have alleged fraud in violation of § 4b of the CEA, 7 U.S.C. § 6b, which constitutes "violat[ions of] this chapter" or "actions brought under this section" within the meaning of codified § 25(a) and (c).

Although improperly identified in the complaint and counterclaim, because the Producers apparently used an out-of-date version of

private action provision.

the U.S.Code, the fraud allegations allege violations identified in codified § 6b(a)(2)(C)(ii), (iii), and (iv).[13] The pertinent provisions of the codified subsection on which the Producers rely are as follows:

### § 6b. Fraud, false reporting, or deception prohibited (a) Contracts designed to defraud or mislead; bucketing orders

It shall be unlawful ... (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(i) to cheat or defraud or attempt to cheat or defraud such other person;

(ii) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or

(iv) to bucket such order, or to fill such order by offset against the order or orders of any other person, or willfully and knowingly and without the prior consent of such person to become the buyer in respect to any selling order of such person, or become the seller in respect to any buying order of such person.

7 U.S.C. § 6b(a).[14] To determine whether this court has subject matter jurisdiction

---

**13.** The version of the code upon which the court relies became effective October 28, 1992, and appears in the 1996 Cumulative Annual Pocket Part to the pertinent volume. In ¶ 10 of Count III of their claims and counterclaims, the Producers have identified the alleged violations as violations of § 6b(B), (C), and (D). If these designations of code sections are again properly correlated to the old version of the code effective until October 28, 1992, they would be § 6b(2)(c)(B), (C), and (D). The proper designation of the provisions, although helpful to prevent confusion, does not effect the substance of the provisions allegedly violated, and the court has been able to determine what provisions of the current code were intended.

**14.** It is readily apparent that whether the HTAs are valid "cash forward contracts," excluded from the purview of the CEA, or "contracts for future delivery," within the purview of the CEA, and consequently illegal, off-market futures contracts, is an element of these CEA claims. *See, e.g., Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 773 (9th Cir.1995) (the CEA does not regulate "cash forward" contracts), *cert. denied sub nom. Schulze v. Commodity Futures Trading Comm'n*, —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 26 (1996); *Salomon Forex, Inc. v. Tauber*, 8 F.3d 966, 970 (4th Cir.1993) (the purpose of the CEA was to control manipulation and speculation of futures trading, but Congress never purported to regulate various non-speculative contracts, such as "spot" trans-

actions and "cash forward" contracts), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994); *Marshall v. Green Giant Co.,* 942 F.2d 539 (8th Cir.1991) (the CEA did not preempt growers' state securities law claims against a vegetable processor arising out of variable-price contracts that tied the price of sweet corn to the price of field corn as reported on the CBOT where the CEA did not apply to the events at issue); *In re Bybee,* 945 F.2d 309, 313 (9th Cir.1991) (the CEA does not regulate cash forward contracts); *Blunt, Ellis & Loewi, Inc. v. Hlavinka,* 896 F.2d 240, 241 (7th Cir.) (the CEA did not preempt all state law claims, and did not preempt breach of contract or negligence claims by a commodities investor against a commodities broker, because they were outside the jurisdiction of the Commodity Futures Trading Commission), *cert. denied,* 498 U.S. 813, 111 S.Ct. 51, 112 L.Ed.2d 27 (1990). However, as the court found above, there was not the merest hint from the pleadings that the declaratory claim, which addresses this element, was directed at these claims rather than the breach-of-contract claims in either case. Furthermore, the court finds that the Producers' Count II seeks the necessary declarations for the CEA fraud claims, in that it seeks declarations of the rights of the parties under the CEA and declarations that the contracts are void owing to fraud in violation of § 4b of the CEA, 7 U.S.C. § 6b. Even if the conclusion that the declaratory judgment claim in the Producers' Count I in both cases and the Elevator's Count I in the North Central Case addresses an element of the CEA fraud claims suggested

over the Producers' Count III, of course, requires the court to determine whether a private cause of action is authorized by codified § 25 for a violation of codified § 6b. The court concludes that such a private cause of action under the CEA is authorized.

The Eighth Circuit Court of Appeals has stated that by amending the CEA in 1982 with the passage of codified § 25(a), "Congress . . . allow[ed] a private right of action for anyone suffering actual damage as a result of a violation of any portion of the CEA." *Marshall v. Green Giant Co.*, 942 F.2d 539, 544–45 (8th Cir.1991); *accord Indemnified Capital Inv., S.A. v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1409 (7th Cir.1993) (stating that "[t]he Act creates a private right of action for 'any person who sustains loss as a result of any alleged violation of this chapter,'" quoting § 25(a)(2)). Various courts have recognized that, prior to 1974, the CEA provided no right of action for violation of any of its antifraud provisions, but that in amendments in 1974, Congress recognized the existence of private implied rights of action found by various courts. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 379, 102 S.Ct. 1825, 1839–40, 72 L.Ed.2d 182 (1982); *Marshall*, 942 F.2d at 544–45; *accord Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510, 1521 (7th Cir.1992); *American Agric. Movement v. Chicago Bd. of Trade*, 977 F.2d 1147, 1152 (7th Cir.1992); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 260 (7th Cir.1992). In 1982, in the *Curran* decision, in which the Supreme Court held that an implied private right of action existed under the CEA for violations of its antifraud provisions, the Court also invited Congress to create an explicit private right of action. *Curran*, 456 U.S. at 394–95, 102 S.Ct. at 1847–48; *Wigod*, 981 F.2d at 1521; *American Agric. Movement*, 977 F.2d at 1153;

*Bernstein v. Lind–Waldock & Co.*, 738 F.2d 179, 185 (7th Cir.1984); *see also Jarrett v. Kassel*, 972 F.2d 1415, 1420 (6th Cir.1992) ("In *Curran*, the Court did not hold broadly that private causes of action exist under any and all sections of the CEA but merely that private actions could be implied under five discrete sections of the act: 7 U.S.C. §§ 6a, 6b, 7(d), 7a(8), and 13(b)," citing *Curran*, 456 U.S. at 390–91, 102 S.Ct. at 1845–46), *cert. denied*, 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *Spicer*, 977 F.2d at 260 ("*Curran* . . . grants investors in the futures market an implied private right of action against brokers who violate the antifraud provisions of the CEA. . . ."). Congress responded by enacting the provision codified at 7 U.S.C. § 25. *Wigod*, 981 F.2d at 1521; *American Agric. Movement*, 977 F.2d at 1153; *Jarrett*, 972 F.2d at 1415 n. 3; *Bernstein*, 738 F.2d at 185.

The private causes of action authorized by codified § 25 are applicable to causes of action that accrued after January 11, 1983. *Marshall*, 942 F.2d at 544; *accord Jarrett*, 972 F.2d at 1420 n. 3. The CEA fraud claims alleged in these actions accrued after that date. Furthermore, because § 25 was passed at the invitation of the Supreme Court for codification of the right of private actions under the CEA recognized in *Curran*, *Curran* recognized an implied right of action for the violation of the CEA alleged here, that is, a violation of § 4b of the CEA, 7 U.S.C. § 6b, and the claim alleged here plainly falls within the scope of § 25 as drafted by Congress, the court finds that Count III of the Producers' counterclaims and claims does indeed come within this court's subject matter jurisdiction.[15] One of the questions the court must address in the section devoted to the motions to dismiss, however, is whether Count III has been ade-

that there was subject matter jurisdiction over the declaratory claims, it would still be necessary for the court to determine first that there is subject matter jurisdiction over the CEA fraud claims themselves.

**15.** The court will consider further, in section III.C below, what effect subject matter jurisdiction over the CEA fraud claims may have on the court's ability to hear other claims, including the

declaratory judgment and breach-of-contract claims asserted by the Elevator in each action. Here it suffices to say that the Elevator's claims may be compulsory counterclaims, under *Fed. R.Civ.P.* 13, to the CEA fraud claims brought by the Producers, such that the court can hear the Elevator's claims in these actions even though the Elevator's claims do not arise under federal law and hence do not have an independent basis to sustain the court's subject matter jurisdiction.

quately pleaded under rules 9 and 12 of the Federal Rules of Civil Procedure.

## B.   The Motions To Dismiss

### 1.   Standards for dismissal pursuant to Fed.R.Civ.P. 12(b)(6)

The Elevator contends that, even if the court has subject matter jurisdiction over the Producers' CEA fraud claims, the court must nonetheless dismiss all of the Producers' claims for failure to state a claim upon which relief can be granted pursuant to *Fed. R.Civ.P.* 12(b)(6). A motion to dismiss may be made, *inter alia,* for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P.* 12(b)(6). A motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6) requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. *Fed. R.Civ.P.* 12(b).[16] Such motions "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989).

In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court "do[es]

not, however, blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Westcott,* 901 F.2d at 1488.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02. The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982).

### 2.   The CEA fraud claims

Looking first to the Producers' CEA fraud claims, the claims upon which this court has found its subject matter jurisdiction can be based, the Elevator asserts a number of "insuperable bars" warranting dismissal. First, the Elevator contends that the Producers'

---

**16.** However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Fed.R.Civ.P.* 12(b)(6). Even where matters outside of the pleadings are presented to the court, however, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dis-

miss." *Skyberg v. United Food and Commercial Workers Int'l Union, AFL–CIO,* 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.* No other materials have been offered in support of the motion to dismiss in this case. Therefore, the motion to dismiss will not be disposed of as provided in Rule 56, but only according to the standards stated herein.

fraud claims have not been pleaded with sufficient particularity as required by *Fed. R.Civ.P.* 9(b), and hence fail to state a claim upon which relief can be granted. The Elevator further challenges both CEA fraud claims on the ground that the Producers have not alleged that the Elevator acted "for or on behalf of" the Producers. Finally, the Elevator argues that the CEA fraud claim stated in the Producers' Count II must be dismissed on the ground that § 25 does not authorize any action for rescission, only actions for damages, and that the claim in Count III should be dismissed, because the producers have not alleged that any action by the Elevator caused them to sustain any losses. The Producers counter that their CEA fraud claims have been pleaded with sufficient particularity. They also contend that they have alleged that the Elevator acted "for or on behalf of" the Producers. Turning to the challenges to individual claims, the Producers argue that rescission is an "alternative" remedy to their request for declaratory relief in Count II, which seeks a declaration that the HTAs are illegal, void, and unenforceable owing to fraud in the inducement, and that the Producers have indeed both alleged and sustained losses as the result of the Elevator's actions, which is the basis for damages sought in Count III. The court finds that it need consider only two of the issues raised by the motion to dismiss.

### a. Rescission as a remedy under the CEA

■ The court finds no authority under the CEA for the "alternative" relief of rescission the Producers seek in their CEA fraud claim in Count II. Again, the statutory provision authorizing private causes of action for violations of the CEA authorizes such actions only "for actual damages." 7 U.S.C. § 25(a). Thus, if the "alternative" relief of rescission of the HTAs is available as the result of a finding that the contracts are within the purview of the CEA and a further finding that they are illegal owing to fraud in violation of § 4b of the CEA, 7 U.S.C. § 6b, that relief must come from some source other than CEA.

Without properly identifying the basis for such an argument, the Producers seem to suggest that rescission is authorized as relief in light of the declaration of rights sought in Count II. Congress has provided for declaratory judgments by the federal courts through two provisions of the Declaratory Judgment Act, which state, in pertinent part, the following:

### § 2201. Creation of remedy

**(a)** In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, *may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.* Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

\*   \*   \*   \*   \*   \*

### § 2202. Further relief

*Further necessary or proper relief based on a declaratory judgment or decree may be granted,* after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. §§ 2201(a), 2202 (emphasis added). The first provision of the Declaratory Judgment Act, § 2201, provides for the specific declaratory relief the Producers seek in Count II. Furthermore, § 2202 provides for the *further*, not "alternative," relief of rescission that might be appropriate as a result of the requested declarations. Thus, dismissal of Count II is not appropriate on the ground that rescission is not an available remedy under the CEA, because that relief is available under the Declaratory Judgment Act.

### b. Pleading of fraud with sufficient particularity

■ Dismissal of all fraud claims, including those under the CEA and under the common law, may nonetheless be appropriate for failure to plead with the sufficiency or particularity required by *Fed.R.Civ.P.* 9(b). The Elevator argues that the fraud allegations here are insufficient under the standards of Rule 9(b), as articulated in this court's decision in *De Wit v. Firstar Corp.*, 879 F.Supp. 947, 989 (N.D.Iowa 1995) (*De*

*Wit I* ). The Elevator contends that the pleadings here are insufficient, because they do not adequately identify what fraudulent statements were purportedly made, by whom they were made, since the statements are pleaded as having been made by one person "and/or" another, whether they were oral or in writing, when they were made, since particular times, dates, and places the statements were purportedly made are not identified, and that knowledge of the falsity of alleged misstatements is alleged in no more than a conclusory fashion.

The Producers assert that they drafted their fraud allegations with the standards identified in the *De Wit I* decision specifically in mind, but they further contend that the usual remedy when a party fails to plead fraud with sufficient particularity is not dismissal, but allowing the pleader to replead with more particularity within a specified time. The Producers cite for the proposition that they should be allowed to amend any inadequately pleaded fraud claims *Nagle v. Merrill Lynch, Pierce, Fenner & Smith,* 790 F.Supp. 203, 210 (S.D.Iowa 1992), and *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir. 1982), *modified on reh'g,* 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied,* 464 U.S. 1008,

104 S.Ct. 527, 78 L.Ed.2d 710 (1983). In addition, the Producers contend that the time of the alleged misstatements is sufficiently pleaded, because it is apparent from the dates the HTAs were executed, and "[a]lthough not specifically pleaded, Counterclaim defendant is aware that the discussions counterclaim plaintiffs allege took place at the office of [the Elevator] prior to or at the time the counterclaim plaintiffs signed these contracts." Counterclaim Plaintiffs' Brief In Resistance To Motion To Dismiss (North Central Case), at 24–25. As to identity of the person making the representations, and the content of those representations, the Producers point to ¶ 18 of the general allegations in the counterclaim in the North Central Case, Counterclaim at 15, and presumably comparable portions of the original complaint in the CeBar Farms Case, as identifying representations made by Vic Steding,[17] and ¶ 19 as alleging Dan Matheson's subsequent confirmation of Vic Steding's actions, activities, and representations. Finally, the Producers contend that what was obtained via the alleged fraud is also adequately alleged, in that ¶ 21 of the general allegations of the counterclaim, and again presumably comparable allegations in the CeBar Farms com-

---

**17.** Because the court agrees with the Producers that the allegations of ¶ 18 are of central importance to the adequacy of the pleading of fraud in this case, the court sets out this paragraph and its subparts in full here:

   18. The actions, activities, conduct and representations of Steding included, but are not limited to:

   a. Affirmations and confirmations that if the cash market is higher than the stated hedge to arrive price less basis, the grain can be sold for cash; if the cash price is lower than the hedge to arrive price less basis, then grain can be sold pursuant to the hedge to arrive price;

   b. Affirmations and confirmations that "Hedge to Arrive Contracts" could be "rolled" as many times as the farmer desired;

   c. Affirmations and confirmations that "Hedge to Arrive Contracts" were "good for the farmer and good for the elevator";

   d. Affirmations and confirmations that the farmer-seller would not be responsible for any brokers fees or commissions;

   e. Affirmations and confirmations that the farmer-seller was not being exposed to any risk on the Chicago Board of Trade Futures

Market, including options or other devices on the Chicago Board of Trade for which the farmer-seller might be responsible for margin calls or broker commissions;

   f. Affirmations and confirmations that multi-year "Hedge to Arrive Contracts" were reasonable, responsible, permissible, and beneficial to the farmer-seller, including statements that multi-year "Hedge to Arrive Contracts" were "an excellent plan";

   g. A request that at least one of the Counterclaim Plaintiffs, Alan L. Brown, contact members of the board of NORTH CENTRAL and encourage the board to approve multi-year contracts. After the NORTH CENTRAL board of directors approved multi-year "Hedge to Arrive Contracts," Alan L. Brown was encouraged to thank the board for its actions approving multi-year "Hedge to Arrive Contracts";

   h. Steding handed the farmer-seller a sheaf of papers entitled North Central F.S. Coulter, showing the historic high, low and average basis for corn transported by the Chicago & North Western Railroad for each month between the years of 1986 and 1994. This emphasized that the price movement "risk" was in the basis.

Counterclaim (North Central Case), pp. 15–17.

plaint, state that the Elevator had a pecuniary interest in false representations to lock producers into multi-year production requirements and to deprive its competitors of access to grain.

In reply, the Elevator contends that the Producers have acknowledged that they have not pleaded the circumstances of the alleged fraud adequately, because they admit that time and place have not been specifically pleaded. The Elevator also points out that the Producers offer no clarification of whether the alleged misrepresentations were in writing or made orally, and that the content of the alleged misrepresentations is still inadequately pleaded, because "express or implied" meanings, not the statements themselves, are alleged.

*i. Fed.R.Civ.P. 9(b).* Rule 9(b) of the Federal Rules of Civil Procedure provides as follows:

> **(b) Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

*Fed.R.Civ.P.* 9(b). In *De Wit I,* this court discussed the requirements for pleading fraud stated in *Fed.R.Civ.P.* 9(b):

> Rule 9(b) clearly imposes obligations additional to those stated in *Fed.R.Civ.P.* 8, which establishes notice pleading. *In re GlenFed, Inc., Securities Litigation,* 42 F.3d 1541, 1547 (9th Cir.1994). The statement of the claim must also aver with particularity the circumstances constituting the fraud. *Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 615 (1990), which states that Rule 9(b) "is a special pleading requirement and not contrary to the general approach of simplified pleading adopted by the federal rules...."). Rule 9(b) "would clearly be superfluous if its only function were to ensure that defendants are provided with that degree of notice which is already required by Rule 8(a)." *Id.*
>
> Rule 9(b) [specifically requires] "particularized allegations of the circumstances constituting fraud." *Id.; Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir.1994) (Rule 9(b) "requires that 'the circumstances constituting fraud ... shall be stated with particularity' ")[, *cert. denied,* —— U.S. ——, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995) ]. Under the rule, allegations of fraud in a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Id.* (describing these as "time, place, and content" requirements); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 53 (2d Cir.1995); *Mills [v. Polar Molecular Corp.],* 12 F.3d [1170,] 1175 [ (2d Cir. 1993) ] (citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)). Scienter may, within limits, be pleaded in conclusory fashion. *Id.* However,

> > general averments of the defendants' knowledge of material falsity will not suffice. Consistent with *Fed.R.Civ.P.* 9(b), the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading. The rule requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged.

> *Lucia v. Prospect Street High Income Portfolio, Inc.,* 36 F.3d 170, 174 (1st Cir. 1994) (quoting *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 361 (1st Cir.1994)). The purpose of this pleading rule is to provide notice to the defendant so that it can provide an adequate answer. *Kaplan,* 49 F.3d at 1370.

*De Wit,* 879 F.Supp. at 989–90. This court's prior recitation of Rule 9(b)'s requirements is in accord with more recent authority from this circuit's court of appeals.

In *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639 (8th Cir.1995), the Eighth Circuit Court of Appeals also explained,

> Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." " 'Circum-

stances' include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *adhered to on reh'g,* 710 F.2d 1361 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, *Greenwood v. Dittmer,* 776 F.2d 785, 789 (8th Cir.1985), conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *In re Flight Transp. Corp. Sec. Litig.,* 593 F.Supp. 612, 620 (D.Minn.1984). *Commercial Property,* 61 F.3d at 644; *Murr Plumbing, Inc. v. Scherer Bros. Fin. Serv. Co.,* 48 F.3d 1066, 1069 (8th Cir.1995) (applying these standards from Rule 9(b) to pleadings of mail and wire fraud); *Allison v. Security Ben. Life Ins. Co.,* 980 F.2d 1213, 1215 (8th Cir.1992) (to satisfy Rule 9(b), allegations of fraud must state with particularity the critical elements of fraud under the governing law, which, under Arkansas law, included the actionable misrepresentations, how the defendant intended the plaintiff to act in reliance on each of the alleged misrepresentations, the nature of the plaintiffs' justifiable reliance on each misrepresentation, and the damage resulting from such reliance). A party pleading fraud is "limited to the specific allegations pleaded in [its] complaint." *McAnally v. Gildersleeve,* 16 F.3d 1493, 1496 (8th Cir.1994) (citing Rule 9(b) and *Greenwood v. Dittmer,* 776 F.2d 785, 789 (8th Cir.1985)).

*ii. The pleading of fraud here.* Although the Producers' allegations of fraud do attribute several misrepresentations specifically to Vic Steding, those allegations, even generously read, are of the import, not the specific content, of those misrepresentations. *Commercial Property,* 61 F.3d at 644 ("content" of misrepresentations must be plead-

ed). Furthermore, as in *De Wit I,* the court finds that the allegations of fraud here, even if the speaker is identified more specifically than in *De Wit I,* are based on conclusory allegations that an agent of a defendant made misrepresentations to unidentified persons, possibly including the plaintiffs or some of the plaintiffs. *De Wit I,* 879 F.Supp. at 990. In *De Wit I,* this court found such uncertainty, not only as to who made the alleged misrepresentations, but to whom they were made when multiple plaintiffs were involved, made the allegations of fraud insufficient under Rule 9(b). *Id.; accord McDonnell Douglas Corp. v. SCI Technology,* 933 F.Supp. 822, 825 (E.D.Mo.1996) (suggesting that the degree of particularity required by Rule 9(b) depends upon the complexity or simplicity of the transaction and the relationship of the parties).[18]

The allegations of fraud here suffer from other defects as well. Although the Producers suggest that the time and place of alleged misrepresentations can be derived by inference from the time at which the HTAs were executed, the *pleadings* themselves do not even give rise to the requested inferences of time or place, and the court concludes that, even if they did, inferences do not fulfill Rule 9(b)'s requirements of pleading with particularity. *Commercial Property,* 61 F.3d at 644 (circumstances that must be pleaded with particularity under Rule 9(b) include time and place of the misrepresentations); *Murr Plumbing, Inc.,* 48 F.3d at 1069 (same). Perhaps most fatal to the pleadings here, however, is that why the statements were allegedly fraudulent is left entirely to inferences based on suggestions of the content of those statements. *De Wit I,* 879 F.Supp. at 989 (circumstances of fraud include why the statements were allegedly fraudulent, citing *In re GlenFed, Inc., Securities Litigation,* 42 F.3d at 1547). Although the Producers allege the falsity of the alleged misrepresentations, at least in conclusory fashion, nowhere do they allege specific facts that make it reasonable to believe that defendants knew

---

**18.** Logically, for a person to have been induced to contract by fraud, that person himself or herself must have been the victim of the materially false statements and those statements must have induced entry into the particular contract in question. The pleading of fraud in these cases simply does not allege which person was the recipient of which allegedly false statements in what relationship to which contracts.

that the statements were materially false or misleading. *De Wit I*, 879 F.Supp. at 990 (citing for these requirements *Lucia*, 36 F.3d at 174). Such pleadings are tantamount to "conclusory allegations that a defendant's conduct was fraudulent and deceptive" which "are not sufficient to satisfy the rule." *Commercial Property*, 61 F.3d at 644. Thus, the Producers' fraud claims have not been pleaded with the particularity required by *Fed. R.Civ.P.* 9(b).

The Producers contend that, even if their fraud claims are inadequately pleaded, they should be afforded the opportunity to amend their pleadings of those claims before the court dismisses the claims outright, citing *Nagle*, 790 F.Supp. at 210, which in turn cites *Bennett*, 685 F.2d at 1062. The *Bennett* decision bases this liberal grant of leave to amend inadequate pleadings on *Fed.R.Civ.P.* 15(a), which states that leave to amend "shall be freely given when justice so requires." However, even under the liberal amendment standards of Rule 15(a), the granting of leave to amend is within the discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Furthermore, this court has rejected the notion that a party putting forward inadequate pleadings must automatically be given leave to amend when the court finds that the opposing party's Rule 12(b)(6) motion should be granted. *De Wit v. Firstar Corp.*, 904 F.Supp. 1476, 1502–1505 & n. 21 (N.D.Iowa 1995) (*De Wit II* ) (citing, *inter alia*, *Edgington v. Missouri Dep't of Corrections*, 52 F.3d 777 (8th Cir. 1995), in which the court found dismissal without prejudice rather than leave to amend had been appropriate, because the dismissed party was free to replead with specificity, and *Dorn v. State Bank of Stella*, 767 F.2d 442 (8th Cir.1985), in which the court differentiated between leave to amend under Rule 15(a) and leave to amend after dismissal pursuant to Rule 12(b)(6) for inadequate pleadings). In these cases, whether or not leave to amend the inadequately pleaded fraud claims should be given, or whether the complaint or counterclaim presenting those claims should simply be dismissed, depends upon a number of other considerations pertaining, once again, to subject matter jurisdiction, to which the court turns in section III.C. below.

### 3. Adequacy of other claims

The court also finds that it need not consider at this time the Elevator's challenges pursuant to *Fed.R.Civ.P.* 12(b)(6) to the adequacy of other claims asserted by the Producers, because repleading of the CEA fraud claims, either by amendment or by refiling, is necessary in both cases.[19] The court anticipates that, in addition to repleading the claims upon which the court finds its subject matter jurisdiction may properly be founded,[20] the Producers will replead their other claims in light of the Elevator's challenges. *See, e.g., De Wit II*, 904 F.Supp. at 1505–06 (discussing the effect of a party's failure to address inadequacies in its pleadings previously pointed out by the opposing party by amending the complaint prior to disposition of a motion to dismiss). Thus, as suggested in the previous subsection, the court must now revisit the issue of subject matter jurisdiction.

### C. Subject Matter Jurisdiction Revisited
#### 1. Supplemental jurisdiction and compulsory counterclaims

Because the court has concluded that there are claims presented in these cases upon which its subject matter jurisdiction could be based, the court must also consider whether it can exercise subject matter jurisdiction

---

**19.** Furthermore, to the extent the Producers' common-law fraud claims in Counts IV and V of their complaint or counterclaim rely on the same fraud allegations as Counts II and III, they are also inadequate under Rule 9(b). To the extent that the Producers should establish that the HTAs in question are within the purview of the CEA, the common-law fraud claims may be preempted by the CEA pursuant to 7 U.S.C. § 25.

**20.** Although the Producers have asserted that all of their claims could establish the subject matter jurisdiction of the court, the court is not persuaded that the CEA's reach is so broad. However, the court finds that it need not decide that question either, in light of its determination that the CEA fraud claims, which might sustain subject matter jurisdiction if adequately pleaded, must be repleaded either by amendment or refiling.

over the Elevator's claims, which the court has found do not present any independent basis for federal question jurisdiction.[21] In *Willman v. Heartland Hosp. East*, 34 F.3d 605 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995), the Eighth Circuit Court of Appeals recognized that under the Judicial Improvements Act of 1990, the former common-law doctrines of pendent and ancillary jurisdiction were codified "under the new rubric of supplemental jurisdiction" in 28 U.S.C. § 1367. *Willman*, 34 F.3d at 613. The court also considered the principles of supplemental jurisdiction articulated in the statute as applicable to both state-law claims and counterclaims remaining after dismissal of the only federal claim in the action. *Id.* The Eighth Circuit Court of Appeals recognized that the district court's discretion to exercise what it still described as "pendent" jurisdiction over the state-law claims and "ancillary" jurisdiction over the counterclaims was broad, and it found that the district court had not abused that discretion by declining to exercise "supplemental" jurisdiction over the state-law claims and counterclaim in the case before it, even though the only federal claim was dismissed only two weeks before trial. *Id.* (finding the dismissal proper under 28 U.S.C. § 1367(c)(3)). Thus, this court is not required to retain supplemental jurisdiction over the state-law claims and counterclaims in this action once it has found that it would have subject matter jurisdiction over certain claims, but those claims may be dismissed, because they are inadequately pleaded.

■ However, the court also finds that, once it has subject matter jurisdiction over a claim, an opposing party's *compulsory counterclaim* also comes within the court's jurisdiction, even when that counterclaim lacks an independent basis for federal subject matter jurisdiction. *See, e.g., Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir.1990) (where counterclaims are compulsory to a federal claim, they come within the court's "ancillary" jurisdiction, even if they lack an independent basis for federal jurisdiction); *Wayzata*

*Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir.1988) (where a counterclaim is compulsory under *Fed.R.Civ.P.* 13(a) to a claim over which the court has subject matter jurisdiction, the court's power to exercise "ancillary" jurisdiction "obviat[es] any possible subject matter jurisdiction problems" for the counterclaim); *accord Marine Transp. Serv. Sea–Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1139 (11th Cir.1994) (although a counterclaim presented no independent basis for federal jurisdiction, it was a compulsory counterclaim, under *Fed.R.Civ.P.* 13(a), to a claim over which the court did have subject matter jurisdiction, and therefore the court had "ancillary" jurisdiction over the counterclaim, citing *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1119 n. 8 (11th Cir.1983), and 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 1409–1410 (1990)).

Thus, the question of whether this court has supplemental jurisdiction over the Elevator's claims under 28 U.S.C. § 1367, in the first instance, depends upon whether the claims are, or through realignment of the parties could be, "compulsory" counterclaims within the meaning of *Fed.R.Civ.P.* 13(a), and, secondarily, upon whether the court decides, in its discretion, to retain jurisdiction over these claims, under § 1367(c), if it does dismiss the Producers' CEA fraud claims, rather than allowing the Producers the opportunity to amend those claims. Rule 13(a) of the Federal Rules of Civil Procedure provides that a counterclaim is "compulsory" "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Fed.R.Civ.P.* 13(a) (also requiring that the claim "does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction"); *TCBY Sys., Inc. v. EGB Assocs., Inc.*, 2 F.3d 288, 290 (8th Cir.1993), *cert. denied*, 511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994); *Tullos*, 915 F.2d at 1195. The phrase "transaction or occurrence," the

---

21. Again, the court has little doubt that it can exercise supplemental jurisdiction over the Producers' common-law claims pursuant to 28 U.S.C. § 1367 where those claims are coupled with adequately pleaded CEA fraud claims over which the court would have subject matter jurisdiction.

Eighth Circuit Court of Appeals has observed, "has been given a broad interpretation and may include a series of occurrences, depending on their logical relationship." *Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fid. Life Ins. Co.*, 958 F.2d 836, 839 n. 4 (8th Cir.1992); *Tullos*, 915 F.2d at 1195 ("transaction" within the meaning of Rule 13(a) is "a word of flexible meaning" which depends largely on the "logical relationship" to the claim or among a series of occurrences, citing *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926)). The court finds that the Elevator's claims without doubt bear the necessary logical relationship to the Producers' claims to be compulsory counterclaims, because all of the claims arise out of the same HTA transaction or series of transactions among the same parties. Thus, the court can hear the Elevator's claims under Rule 13(a) and 28 U.S.C. § 1367 if the Elevator's claims are asserted or reasserted as counterclaims to the Producers' federal claims, if the Producers' federal claims are in turn adequately pleaded. However, if the court determines that it should dismiss outright the Producers' federal claims this early in the proceedings, the court can, and most likely will, also dismiss the Elevator's claims. *See* 28 U.S.C. § 1367(c)(3) (the court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction).

### 2. Disposition of all claims

This, then, is the court's disposition of all of the claims presented by the parties in each of these actions in light of the principles of subject matter jurisdiction considered herein, the conclusion that the only potentially viable federal claims are inadequately pleaded, and the issue of whether the court should dismiss those federal claims or allow their amendment. In the CeBar Farms Case, where the potentially viable federal claims are asserted in the original complaint by the Producers, and the Elevator's claims are already asserted as compulsory counterclaims pursuant to *Fed.R.Civ.P.* 13(a), the court's subject matter jurisdiction is not an insuperable impediment to entertaining all of the claims of the parties to that action. Rather, the only impediment

is the inadequacy with which the federal claims, the CEA fraud claims, have been pleaded. In these circumstances, rather than dismissing the claims of the CeBar Farms Plaintiffs, and either dismissing the Elevator's counterclaims as well or deciding to retain them under 28 U.S.C. § 1367, the court will grant the CeBar Farms Plaintiffs sixty days within which to file an amended complaint rectifying the inadequacies in the fraud pleadings identified by this court, and further considering the Elevator's challenges to the adequacy of the pleading of the fraud and other claims. *De Wit II*, 904 F.Supp. at 1502–06 (and cases cited therein).

■ The court's subject matter jurisdiction over the North Central Case is, however, much more problematic. Although the court could exercise subject matter jurisdiction over the North Central Defendants' CEA fraud claims, *if those claims were adequately pleaded,* in order to exercise jurisdiction over the Elevator's claims, the parties must be completely realigned, so that the North Central Defendants would be construed to be the plaintiffs in the action, invoking the court's subject matter jurisdiction on the basis of the CEA fraud claims, and the Elevator would be construed to be the defendant, asserting its claims of breach of contract as compulsory counterclaims under *Fed.R.Civ.P.* 13(a).

Although these complications might suggest that the simplest approach is to dismiss the North Central Case in its entirety, without prejudice, so that the parties may realign themselves in a refiled lawsuit, in the interest of justice, the court deems it appropriate to retain jurisdiction over the disputes between the parties. Therefore, the court will deem the parties realigned, so that the Elevator's claims are considered compulsory counterclaims to the Producers' CEA fraud claims over which the court has subject matter jurisdiction. Those fraud claims, however, are presently inadequately pleaded under the standards of *Fed.R.Civ.P.* 9(b) and must be repleaded. The court will therefore also grant the North Central Defendants sixty days in which they may rectify the inadequacies in the fraud pleadings identified by this court, and further consider the Elevator's

challenges to the adequacy of the pleading of the fraud and other claims. *De Wit II*, 904 F.Supp. at 1502–06 (and cases cited therein). The court believes that this resolution is tinged with the justice, liberality, economy, and pragmatism with which it is to apply the Federal Rules of Civil Procedure, yet it is also guided by the court's recognition of its limited subject matter jurisdiction.[22]

## IV. CONCLUSION

The court's disposition of the present cases is the result of the complicated interweaving of the court's own concerns with its subject matter jurisdiction and the Elevator's challenges to the Producers' claims as inadequately pleaded. The court concludes that it does not have subject matter jurisdiction on the basis of the original complaint, that is, the Elevator's claims, in the North Central Case, because the Elevator's claims do not arise under federal law. However, in the CeBar Farms Case, the court does have, or potentially have, subject matter jurisdiction, because the plaintiff's CEA fraud claims are viable federal actions. Where the court otherwise has subject matter jurisdiction over the Producers' federal claims, the court concludes that the Producers' remaining common-law claims and the Elevator's claims, brought as compulsory counterclaims, come within the court's supplemental jurisdiction. In order to obtain jurisdiction over the Elevator's claims as compulsory counterclaims, the parties in the North Central Case must be realigned.

22. As a final matter, because the court is otherwise retaining jurisdiction over these cases, the court must determine briefly whether, in its discretion, it should hear the declaratory judgment claims pertaining to the legality of the HTAs under § 6(b) of the CEA, 7 U.S.C. § 6(b). As the court observed in footnote 6, there are a number of factors, besides subject matter jurisdiction, that the court must consider in deciding whether to exercise jurisdiction over a declaratory judgment action. *See Olympus Aluminum Prods., Inc.*, 930 F.Supp. at 1304–08 (articulating the requirements for a court to entertain a declaratory judgment action). A brief examination of these factors indicates the propriety of entertaining the present declaratory judgment claims. The controversy among the parties is "live" and therefore "substantial." *Id.* at 1305. Also, the parties have standing to pursue the declaratory

Yet, the court must grant the Elevator's motion to dismiss the Producers' claims in both actions to the extent that the court finds the CEA and common-law fraud claims have not been pleaded with the particularity required by *Fed.R.Civ.P.* 9(b). In recognition of the principles of subject matter jurisdiction considered herein, the conclusion that the only potentially viable federal claims are inadequately pleaded, and the issue of whether the court should dismiss those federal claims or allow their amendment, the court has fashioned the following disposition of all claims:

1. As to the North Central Case,

   a. The court lacks subject matter jurisdiction over the claims in the complaint. However, the court will exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over those claims construed as compulsory counterclaims under *Fed. R.Civ.P.* 13(a) to the claims stated in the present counterclaim that the court has found herein have an independent basis for federal question jurisdiction.

   b. The Elevator's motion to dismiss counterclaims in the North Central Case is **granted** as to Counts II and III to the extent that the court finds claims of fraud inadequately pleaded under *Fed.R.Civ.P.* 9(b) and 12(b)(6), and **granted** to the extent that the North Central Defendants must, *within sixty (60) days*, file an **amended complaint** adequately pleading fraud pursuant to *Fed.R.Civ.P.* 9(b) and this court's directions; in the interest of economy to the parties and the court, such

claims, because the injuries each complains of are "'imminent and direct, not hypothetical or fantastic.'" *Id.* at 1306 (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir.1996)). Finally, the court believes that the exercise of its discretion to hear the declaratory claims is warranted, because the declaratory claims are not being used simply for tactical advantage, nor has the court allowed them to provide a new portal for entry into federal court, and there is no pending state action that would provide an appropriate forum for adjudication of the defensive issue of the legality of the HTAs under the CEA, which, although defensive, is a matter governed by federal law. *Id.* at 1306–07. Instead, the court finds that the declaratory claims here are asserted for the legitimate purpose of declaring the rights and other legal relations of the interested parties. *Id.* at 1307.

an amended complaint may also rectify any inadequacies perceived in the pleading of other claims. The motion to dismiss is otherwise **denied as moot.** Denial of the Elevator's motion to dismiss all claims of the counterclaim is *without prejudice* to reassertion of such a motion within the appropriate time after the filing of an amended counterclaim.

2. As to the CeBar Farms Case,

a. The court finds that it has subject matter jurisdiction over this action on the basis of Counts II and III, which state federal causes of action under the CEA.

b. The court finds that it has subject matter jurisdiction over the counterclaims in this action pursuant to *Fed.R.Civ.P.* 13(a) and 28 U.S.C. § 1367.

c. The motion to dismiss counterclaims in the CeBar Farms Case is **granted** to the extent that the court finds claims of fraud inadequately pleaded under *Fed.R.Civ.P.* 9(b) and 12(b)(6), and **granted** to the extent that the CeBar Farms Plaintiffs must, *within sixty (60) days,* file **an amended complaint** adequately pleading fraud pursuant to *Fed.R.Civ.P.* 9(b) and this court's directions; in the interest of economy to the parties and the court, such an amended complaint may also rectify any inadequacies perceived in the pleading of other claims. The motion to dismiss is otherwise **denied as moot.** Denial of the Elevator's motion to dismiss is *without prejudice* to reassertion of such a motion within the appropriate time after the filing of an amended complaint.

**IT IS SO ORDERED.**